UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEREMIAH D. WALKER WASHINGTON, JR.,

                      Plaintiff,

    v.

DOWNSTATE ADMINISTRATIVE NURSE, *et al.*,

                      Defendants.

No. 21-CV-7159 (KMK)

OPINION & ORDER

---

Appearances:

Jeremiah D. Walker Washington, Jr.
Woodbourne, NY
*Pro se Plaintiff*

Kathryn E. Martin, Esq.
Office of the New York Attorney General
White Plains, NY
*Counsel for Defendant John Morley*

KENNETH M. KARAS, United States District Judge:

    Jeremiah Walker Washington, Jr. ("Plaintiff"), proceeding pro se, brings this Action against Chief Medical Director John Morley ("Morley"), Dr. Mikhail Gusman, Richard D'Amico, Jon Miller, Mario Malvarosa, Razia Ferdous, Lara Darling, Patrick Bigaud, Alexander Berger, Anjum Haque, Noriel DeGuzman, Dr. David Dinello, Kausar Chaudhry, Mary Jo Hughes, Abdul Qayyum, and Dr. Susan Mueller (together with Morley, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging constitutional violations, including deliberate indifference, medical negligence and indifference, delay and/or denial of medical treatment, cruel and unusual punishment, and intentional infliction of emotional distress. (*See generally* Second Am. Compl.

("SAC") (Dkt. No. 22).)[1]  Before the Court is Morley's Motion to Dismiss the Second Amended Complaint.  (*See* Not. of Mot. (Dkt. No. 34).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Second Amended Complaint, (*see* SAC), and are assumed to be true for the purposes of ruling on the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff alleges that upon admission to Downstate Correctional Facility on July 13, 2017, Plaintiff was examined by an administrative nurse and facility doctor, with whom he "discussed his medical history . . . and informed them of the medication he was taking."  (SAC 6.)  Plaintiff alleges that "in at least five [] different [New York State] correctional facilities, [P]laintiff was prescribed medication by the medical and mental health departments."  (*Id*.)  Specifically, Plaintiff was prescribed Paxil, Keppra, and Dilentin, which Plaintiff alleges are all medications "known to have potential dangerous side effects," and "Plaintiff was never advised by any of the [D]efendants of the potential side effects" of these drugs.  (*Id*. at 6–7.)

In August 2018, Plaintiff alleges that he began experiencing "extreme pain" near his chest, as well as other symptoms such as discharge, soreness, and swelling.  (*Id*. at 7.)  Plaintiff was seen in September and October 2018 by a non-party nurse practitioner, who asked him about his current medications.  (*Id*.)  The nurse practitioner scheduled him for additional blood work, and while these tests were being run, "Dr. Lee" ended Plaintiff's prescription for Paxil.  (*Id*.)

---

[1] As of the date of this Opinion, no Defendant other than Morley has been served in this Action.

In December 2018, Plaintiff was scheduled to get an MRI at Albany Medical Center, and to see an endocrinology specialist at the Coxsackie Correctional Facility Regional Medical Unit. (*Id*.) On March 9, 2019, Plaintiff was examined by the endocrinologist, who diagnosed Plaintiff with "gynecomastia," or the enlargement of male breast tissue. (*Id*.) Plaintiff alleges that the endocrinologist stated that the condition was a side effect of Plaintiff's medication, and recommended that Plaintiff get surgery to relieve the condition. (*Id*. at 7–8.) Between March 2019 and January 2020, Plaintiff had four follow-up visits with the endocrinologist, and Plaintiff alleges that the endocrinologist continued to recommend surgery to treat the condition because the medication prescribed to counteract the condition was not successful. (*Id*. at 8.) In January 2020, Plaintiff alleges that he was told that the endocrinologist's recommendation for surgery was submitted by Defendant Gusman, which was "ultimately denied" by Defendant Dinello. (*Id*.) Plaintiff alleges that another medical provider submitted a referral to general surgery, which was also denied by "central Office" medical on October 26, 2020, which Plaintiff asserts refers to Defendant Mueller. (*Id*.)

Plaintiff alleges that after the endocrinologist's surgical recommendation was denied, "[P]laintiff's complaints to . . . Dr. Gusman were disregarded" and "Dr. Gusman told [P]laintiff that he could not receive any more pain medication and that there is nothing more that his staff could do to help [P]laintiff." (*Id*.) In 2021, Plaintiff states that he was seen by a different endocrinologist at Coxsackie Correctional Facility who informed Plaintiff that his condition was caused by Plaintiff's prescription for dilentin. (*Id*.) Finally, Plaintiff alleges that "[a]ll of the named defendants were aware at all relevant times that [P]laintiff was taking these medications on a daily basis for at least [three] or [four] years and that [P]laintiff was complaining of chest swelling and chest pains." (*Id*.) Plaintiff alleges that, despite this, "Defendants never let

3

[P]laintiff know that his prescriptions were likely the cause of these problems" and Plaintiff now allegedly "suffers from permanent pain and damage because of [Defendants'] negligence and their failure [to] act diligently to [P]laintiff's constant complaints." (*Id*. at 8–9.)

### B. Procedural History

Plaintiff filed his initial Complaint on August 23, 2021. (*See* Compl. (Dkt. No. 2).) On September 23, 2021, Plaintiff's request to proceed in forma pauperis ("IFP") was granted, (*see* Dkt. No. 4), and on November 8, 2021, the Court entered an Order to Amend to address deficiencies in Plaintiff's complaint, (*see* Dkt. No. 5). Plaintiff filed an Amended Complaint on January 11, 2022. (*See* Am. Compl. (Dkt. No. 7).) After correspondence regarding the identification of Doe Defendants, (Dkt. Nos. 14–21), Plaintiff filed his Second Amended Complaint on July 25, 2022, (SAC).

On December 15, 2022, Morley filed a pre-motion letter in anticipation of filing a motion to dismiss the Second Amended Complaint. (*See* Dkt. No. 30.) In lieu of a pre-motion conference, the Court set a briefing schedule on December 16, 2022. (*See* Dkt. No. 32.) On January 17, 2023, Morley filed the instant Motion. (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. ("Morley Mem") (Dkt. No. 36).) Plaintiff filed his Opposition on February 16, 2023. (Pl's Opp. to Mot. to Dismiss ("Pl's Opp.") (Dkt. No. 37).) Morley filed his Reply on March 3, 2023. (Reply Mem. of Law ("Morley Reply") (Dkt. No. 38).) Plaintiff filed a Sur-Reply on April 10, 2023. (Pl's Opp. to Reply Mem. of Law ("Pl's Sur-Reply") (Dkt. No. 40).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Division 1181*, 9 F.4th at 94 (citation omitted). Additionally, "when ruling on [a] Rule 12(b)(6) motion[] to dismiss,"

5

district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin*, 6 F.4th at 473 (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).  However, when a plaintiff proceeds pro se, the Court "may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), and, moreover, must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  That said, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B.  Analysis

Plaintiff alleges that by the conduct laid out above, Defendants are responsible for deliberate indifference, medical negligence and indifference, delay and/or denial of medical treatment, cruel and unusual punishment, and intentional infliction of emotional distress.  (*See* SAC.)  Morley argues that any claims against him must be dismissed because Plaintiff has failed to allege Morley's personal involvement in any of alleged misconduct.  (*See* Morley Mem. 3–4.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d

133, 138 (2d Cir. 2013); *see also Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation and quotation marks omitted)).  "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation and quotation marks omitted); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement because the "[p]laintiff's general allegation that all defendants were involved in the alleged constitutional violations does not rescue the claims against" a particular defendant).

Here, Plaintiff lists Morley in the caption of the SAC as a "Chief Medical Officer" but otherwise fails to mention Morley by name in any of the factual allegations.  (*See generally* SAC.)  "Failing to name a defendant outside the caption of the complaint is grounds for dismissal."  *Price v. Koenigsmann*, No. 19-CV-4068, 2020 WL 4274079, at *4 (S.D.N.Y. July 24, 2020) (collecting cases); *see also Thomas v. Dubois*, No. 19-CV-7533, 2020 WL 2092426, at *3 (S.D.N.Y. Apr. 30, 2020) (dismissing pro se inmate plaintiff's complaint because the plaintiff did "not even mention [the d]efendant in the body of the [c]omplaint" (collecting cases)); *Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019) (explaining that "personal involvement is not established where the defendant's name appears only in the caption of the complaint" (citation omitted)); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *4–5 (S.D.N.Y. Mar. 29, 2019) (dismissing defendants who were not alleged to have participated in, inter alia, any alleged constitutional violations (collecting cases)); *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *3 (S.D.N.Y. July

25, 2014) (dismissing the plaintiff's § 1983 claims against certain defendants whose names appeared only in the caption of the complaint and on the list of all defendants).

In opposition, Plaintiff argues that "[a]s the Chief Medical Director of [New York State Department of Corrections and Community Supervision ('DOCCS'),] [Morley] is made aware of, and makes the final decision(s) on all medical procedures, especially those designated surgical procedures or specialist care[.]" (Pl's Opp. 1.) As an initial matter, the Court notes that Plaintiff did not allege this in his SAC. "Even in the pro se context, the Court is not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Cadet v. All. Nursing Staffing of N.Y, Inc.*, —F. Supp. 3d—, 2022 WL 4584246, at *8 (S.D.N.Y. Sept. 29, 2022) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)). Moreover, to the extent that Plaintiff is alleging Morley's involvement in his capacity as a supervisor, Plaintiff's allegations still fall short. In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit "held that 'there is no special rule for supervisory liability[,]' thereby doing away with 'the special standards for supervisory liability' . . . and clarifying that 'a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *32 (S.D.N.Y. Mar. 26, 2021) (quotation marks omitted) (quoting *Tangreti*, 983 F.3d at 617–18). Therefore, even with respect to supervisors, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. For this reason, Plaintiff's reliance upon *Bushey v. Morley*, No. 21-CV-76, 2021 WL 4134794 (N.D.N.Y. Sept. 10, 2021), is inapposite: in *Bushey*, the plaintiff specifically alleged that Morley personally denied his requests for treatment, an allegation that is absent from Plaintiff's SAC. *Id*. at *2.

8

Similarly, the SAC does not "sufficiently allege[] personal involvement on [the] part of [Morley] in that [he] either ignored or outright denied Plaintiff's requests for a treatment" as argued by Plaintiff. (Pl's Opp. 1 (quotation marks and citations omitted) (fourth alteration in original).) Indeed, the SAC appears to allege this for other Defendants, such as Gusman and Mueller, (see SAC 8), but Plaintiff does not allege this against Morley, (see generally id.). Plaintiff does allege that "[a]ll of the named defendants were aware" that Plaintiff was taking these medications and that "[P]laintiff was complaining of chest swelling and chest pains." (Id. at 8.) However, Plaintiff's "'group pleading' . . . . fail[s] to differentiate as to which defendant was involved in the alleged unlawful conduct[,]" and is thus "insufficient to state a claim" as to Morley. *Adamou v. Cnty. of Spotsylvania*, No. 12-CV-7789, 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016); *see also SCE Group Inc. v. City of New York*, No. 18-CV-8909, 2020 WL 1033592, at *3 (S.D.N.Y. March 3, 2020) (dismissing the claims against individual defendants for lack of personal involvement because the plaintiff "set[] forth a panoply of law enforcement actions that it claimed were biased" but none of the allegations "refer specifically to any [i]ndividual [d]efendant" as required by Rule 8); *Johnson v. City of New York*, No. 15-CV-8195, 2017 WL 2312924, at *10 (S.D.N.Y. May 26, 2017) (noting that "impermissible group pleading . . . fails to specify which defendant or defendants were involved").

Finally, Plaintiff alleges that Morley "was sued in his official capacity and included for 'injunctive purposes only' and 'to ensure that any relief granted would benefit [Plaintiff] regardless of transfer within DOCCS." (Pl's Opp. at 1 (citing *Bushey*, 2021 WL 4134794, at *4).) However, it does not appear that Plaintiff sued Morley in his official capacity, as there is no indication of this on the SAC. (*See generally* SAC.) Moreover, Plaintiff does not request injunctive relief in the SAC, instead only requesting $375,000 in damages. (*See id.* at 10.)

9

Accordingly, Morley's Motion to Dismiss based on lack of personal involvement is granted.

### III.  Conclusion

For the foregoing reasons, Defendant Morley's Motion to Dismiss is granted.  Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").  Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including the identification of individuals and the nature of their involvement.  If Plaintiff fails to abide by the 30-day deadline, the claims that are dismissed could be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 34), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.
SO ORDERED.

Dated:   September 26, 2023
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge